

**SO ORDERED.**

**SIGNED this 28 day of April, 2010.**

                                                **Stephani W. Humrickhouse**
                                                **United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **SIX FORKS LHDH, LLC** | **10-01254-8-SWH** |
|       **DEBTOR** | |

### ORDER REGARDING MOTION FOR TURNOVER AND ASSUMPTION OF LEASE

The matter before the court is the debtor's motion for turnover of funds and to assume a pre-petition lease. A hearing took place in Raleigh, North Carolina on April 13, 2010.

Six Forks LHDH, LLC filed a motion for relief under chapter 11 of the Bankruptcy Code on February 18, 2010. The debtor owns and manages a 23,006 square foot office building in Raleigh, which is currently 70% occupied. On January 10, 2010, the debtor entered into a master lease agreement with Osborne Capital, LLC, as amended on February 18, 2010. Under the lease agreement, Osborne will lease the remaining 30% of the building at $10.50 per square foot for a period of 5 years, with an option to renew for an additional 5-year period, at the same terms. The lease also calls for upfit and improvements to be performed by the debtor prior to occupancy. The debtor represents that the improvements have begun, but cannot be completed without additional funds, namely, funds currently held in escrow for such purpose by the debtor's lender, Bank of

America. The debtor seeks an order for turnover of these funds, as well as approval of its assumption of the lease, or, in the alternative, authority to enter the lease post-petition.

Bank of America holds a deed of trust on the property, and objects to the relief requested, contending that (1) the purported lease is void or voidable, because Bank of America did not pre-approve the lease as required by the loan agreement with the debtor, and (2) the lease is not in the best interests of the debtor. Specifically, Bank of America asserts that it has only received sparse information from the debtor regarding Osborne and based on that information, it has concerns about Osborne's creditworthiness. In addition, Bank of America contends that the rental rate under the lease is below current market rates, the lease does not provide for an increase in the rental rate over the course of five years, and the option to renew creates the potential for 10 years of under market rental proceeds. Bank of America objects to turnover of the funds in escrow, asserting that the funds are unavailable because the proposed tenant was not pre-approved, and the debtor is in default under the loan agreement.

## Discussion

I.  Procedural Considerations and Applicable Law

Six Forks LHDH, LLC filed the instant motion as a debtor-in-possession seeking to assume a lease under § 365 of the Bankruptcy Code. At the hearing, the debtor indicated that based upon Bank of America's position that the pre-petition lease was void for failure to get pre-approval from the bank, it alternatively sought authority to enter the lease post-petition pursuant to § 363. The procedural nature of the relief sought turns upon whether the lease is void because Bank of America did not approve of it, or whether entry of the lease without Bank of America's approval is simply an event of default under the loan agreement.

It is not necessary for the court to determine this issue, however, because the standard for the court's analysis is the same if it is considering the propriety of the debtor's assuming a pre-petition lease or entering into a post-petition lease: did the debtor exercise sound business judgment. See In re FCX, Inc., 60 B.R. 405 (E.D.N.C. 1986) (regarding the assumption of an executory contract under § 365); In re Oberlin Plaza One, LLC, 2009 Bankr. LEXIS 1597 (Bankr. E.D.N.C. June 19, 2009) (regarding the use of estate property under § 363); U.S. ex rel. Rahman v. Oncology Assoc., P.C., 269 B.R. 139, 161 (D. Md. 2001).  For that reason, the court will address the matter as a request for approval of a post-petition lease.

Although § 363(c)(1) allows a debtor-in-possession to enter into transactions in the ordinary course of business, based upon the magnitude of the space involved and the particular terms of the lease as discussed below, the proposed lease does not appear to be in the ordinary course of the debtor's business at this time.  Accordingly, the proposed lease is governed by § 363(b), which provides that "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."[1]  11 U.S.C. § 362(b).  In reviewing a proposed lease or other transaction under this section, the court should consider whether the debtor-in-possession has exercised sound business judgment such that approval of the proposed course of action is warranted.  U.S. ex rel. Rahman, 269 B.R. at 161.  The court must therefore determine whether the debtor has articulated a business justification for entering the proposed lease with Osborne.

II.     The Proposed Lease

The debtor contends that the proposed lease is necessary to its reorganization, and that its chances of emerging successfully from bankruptcy are improbable if the lease is not approved.

---

[1]This section is made applicable to the debtor-in-possession by 11 U.S.C. § 1107(a).

According to Thomas Hurley, manager of Osborne Capital, LLC, Osborne plans to fund the initial lease payments with cash on hand, as it subleases the space as quickly as possible. In light of this arrangement, the proposed lease shifts the risk of renting the available space in debtor's building to the master tenant, Osborne. However, this appears to be one of few positive factors associated with the proposed lease.

Although the risk lies with Osborne, rather than the debtor, the financial information provided regarding Osborne consists of a relatively thin balance sheet, making it difficult to properly evaluate the financial stability of this prospective tenant. Further, the proposed lease is not backed by a guarantor, thereby amplifying the need for solid information as to Osborne's financial picture.

According to the testimony of C.M. Crutchfield, an expert witness tendered by Bank of America, the rental rate of approximately $10 per square foot falls below the market rate, which Crutchfield estimates is not less than $13 per square foot. Furthermore, Crutchfield testified that the lease was not in the debtor's best interest because it: does not provide for escalation of the rental rate at any point over the five-year term, and the rent would remain the same should Osborne elect to renew the lease for another five-year term. Thus, the property could be tied up for as long as 10 years while only generating a below market rate of rent. The debtor did not offer any testimony to dispute Bank of America's expert's opinion.

Based upon these factors, particularly the lack of escalation of the rental rate and the option to renew at the same low rate, the court concludes that the lease is not in the debtor's best business interests and it will not be approved as proposed.

III.Turnover of Funds in Escrow

In light of the court's disapproval of the lease as proposed, and because the funds were intended for upfit and improvements pursuant to the lease, the court will deny the motion for turnover of funds.

IV.Conclusion

Based upon the foregoing, the debtor's request for turnover of funds and to assume or enter the proposed lease is **DENIED.**

**SO ORDERED**.

**END OF DOCUMENT**